## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Richard Joseph Jacobson,                          Civil No. 07-4420 (DWF/RLE)

               Plaintiff,

v.                                                                **MEMORANDUM
OPINION AND ORDER**

Dan Mott, Reed Bye, and
Joan Kunz,

               Defendants.

---

Randall D. B. Tigue, Esq., Randall Tigue Law Office, PA, counsel for Plaintiff.

Jason M. Hiveley, Esq., and Jon K. Iverson, Esq., Iverson Reuvers, LLC, counsel for
Defendant Mott.

Marsha Eldot Devine, Assistant Attorney General, Minnesota Attorney General's Office,
counsel for Defendants Bye and Kunz.

---

## INTRODUCTION

This matter is before the Court on separate Motions for Summary Judgment

brought by Defendants Dan Mott ("Mott"), Reed Bye ("Bye") and Joan Kunz ("Kunz").

For the reasons set forth below, the Court grants the motion of Defendants Troopers Bye

and Kunz, and grants in part and denies in part the motion of Defendant Deputy Mott.

## BACKGROUND

Deputy Mott is a deputy sheriff for the Mille Lacs County Sheriff's Office.

Troopers Bye and Kunz are troopers with the Minnesota State Patrol.  On June 18, 2005,

Deputy Mott learned that an arrest warrant existed for the arrest of Plaintiff

Richard Joseph Jacobson ("Jacobson").[1]  At about 10:30 p.m. on June 18, 2005, Mott

went to Jacobson's workplace, Fat Jack's Cabaret ("Fat Jack's") in Bock, Minnesota, to

arrest him.  Defendants Bye and Kunz accompanied Mott to Fat Jack's to provide

assistance with the arrest.[2]

Upon their arrival, Deputy Mott entered Fat Jack's, where Jacobson was tending

bar.  Deputy Mott asked Jacobson to come outside and Jacobson agreed.  Once outside,

Mott informed Jacobson that he had a warrant for his arrest.  Jacobson asked what the

warrant was for and, according to Jacobson, Deputy Mott replied that he did not know

what the warrant was for and did not have to tell Jacobson.[3]

The parties disagree about what happened next.  According to Deputy Mott,

Jacobson refused to get into Deputy Mott's squad car, and Jacobson indicated he wanted

to go back to work.  According to Deputy Mott, he twice attempted to take Jacobson into

custody by grabbing Jacobson's left arm, but Jacobson pulled away both times.[4]

According to Jacobson, he did not physically resist being arrested.  Jacobson claims that

he said, "[t]his is bullshit," but disputes that he refused to get in the car and disputes that

---

[1]     The warrant was issued for driving under a cancelled license and all parties agree
that the warrant was valid.

[2]     Deputy Mott was also accompanied by an intern, who was riding in Deputy Mott's
squad car.

[3]     In Minnesota, when an individual is arrested upon a warrant, the arresting officer
"need not have the warrant in possession at the time of the arrest, but shall inform the
defendant of the existence of the warrant and of the charge."  Minn. R. Crim. P. 3.03,
subd. 3.

[4]     Deputy Mott testified to these events at Jacobson's trial, and the prosecutor also
played a videotape of the arrest.  The videotape was not submitted to this Court.

he pulled away from Mott.  (Doc. No. 28 ¶ 3, Ex. B at 28.)  A witness to the event, Laura

Bekius ("Bekius"), also indicates that she saw the interaction between Jacobson and

Deputy Mott and that Jacobson did not pull away or resist arrest in any way.  In any

event, Deputy Mott and Trooper Bye grabbed Jacobson and pushed him down on the

hood of a nearby car.  Trooper Kunz had begun to walk away from the scene because she

believed that the other officers had the situation under control, but she turned back and

"may have put her hand on [Jacobson's] back" while he was pushed over the hood of the

car.  (Doc. No. 31 ¶¶ 6, 8.)  Jacobson was handcuffed and placed in Deputy Mott's squad

car.

Jacobson was charged with one count of gross misdemeanor obstructing legal

process in violation of Minnesota Statute section 609.50, subds. 1(2) and 2(2), and the

criminal complaint alleged that Jacobson "intentionally and unlawfully did obstruct,

resist, or interfere with a peace officer while the officer was engaged in the performance

of official duties, and the act was accompanied by force or violence or the threat thereof."

(Doc. No. 28 ¶ 4, Ex. C at 2.)  Jacobson was also charged with one misdemeanor count of

obstruction in violation of Minnesota Statute section 609.50, subds. 1(2) and 2(3).  (*Id.*)

In an order dated April 19, 2006, the gross misdemeanor charge was dismissed for lack of

probable cause.  (Doc. No. 28 ¶ 5, Ex. D.)  The state court held that the gross

misdemeanor offense of obstruction requires that a defendant go beyond resistive

noncompliance with an arrest and "actually become[] the aggressor in an intended assault

against the person of the officers" conducting the arrest, such as by kicking an officer,

threatening the officer with a weapon, or throwing a punch at an officer.  (*Id*. at 4.)  The

3

state court concluded that Jacobson's alleged conduct did not rise to the level necessary to satisfy the gross misdemeanor statute.  (*Id.*)  The court concluded that probable cause existed for the misdemeanor obstruction charge, however, because a jury could conclude that Jacobson resisted arrest by pulling away from Deputy Mott twice as Deputy Mott attempted to arrest him.  Jacobson was tried before a jury on the misdemeanor obstruction charge and was acquitted.  (Doc. No. 28 ¶ 6, Ex. E.)

In this suit, Jacobson claims that the Defendants fabricated the factual basis for the gross misdemeanor obstruction of legal process charge to punish him for questioning the reason for his arrest.  Jacobson contends that he could have bailed out on the existing warrant on the night of his arrest, and had he only been charged with misdemeanor obstruction, he would still have been released that night.  Instead, as a result of the gross misdemeanor obstruction charge, Jacobson was held in jail over the weekend until he could be brought before a judge on Monday.  Jacobson contends this detention was a violation of his rights under the First, Fourth and Fourteenth Amendments.  In addition, Jacobson also asserts a claim for malicious prosecution.

## DISCUSSION

### I.     Legal Standard

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party.  *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996).  However, as the Supreme Court has stated,

"[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

## II.    Claims Against Troopers Bye and Kunz

Troopers Bye and Kunz assert that summary judgment is warranted because Jacobson has not pointed to any facts supporting his claims that they were involved in any violation of his rights. The Court agrees.

Troopers Bye and Kunz were present for Jacobson's arrest at Fat Jack's only to assist Deputy Mott. They indicate that they were not involved in any way in the decision to charge Jacobson with a crime. (Doc. No. 30 ¶ 10; Doc. No. 31 ¶ 11.) Jacobson stated in his deposition that Deputy Mott was the officer involved in charging him with an offense, and also acknowledged, as far as he was aware, Troopers Bye and Kunz were not involved in the decision. (Doc. No. 28 ¶ 3, Ex. B at 59.)

Now, however, Jacobson asserts that Trooper Bye "was an active participant in the decision to falsely accuse" Jacobson, and that Trooper Bye made a special trip to the jail to taunt Jacobson about the charges.  (Doc. No. 37 at 14.)  According to Jacobson's deposition testimony, Trooper Bye told Jacobson that he would be sitting in jail for the weekend and indicated that Jacobson should have listened to Deputy Mott.  (Doc. No. 28 ¶ 3, Ex. B. at 43-44.)  Jacobson does not identify any specific actions taken by Trooper Kunz showing that she was involved in the decision to charge him.  Jacobson also argues, however, that whether or not the troopers directly participated in the decision to charge him, both had a duty to intervene to prevent Deputy Mott from fabricating the charge against Jacobson and failed to do so.

The Court concludes that Jacobson's claims against Troopers Bye and Kunz fail for several reasons.  First, there is no basis in the record to support Jacobson's claim that Troopers Bye and Kunz participated in the decision to charge him with a crime.  Even viewing the facts and drawing all reasonable inferences in the light most favorable of Jacobson, it is too great a leap to connect Trooper Bye's statements at the jail with participation in a decision to falsely accuse Jacobson of a criminal offense.  This is particularly true given that Jacobson's arguments regarding Trooper Bye directly contradict Jacobson's deposition testimony.  In addition, there are simply no facts in the record suggesting that Trooper Kunz was involved in the decision to charge Jacobson in any way.

Second, no duty to intervene existed for Troopers Bye and Kunz.  Jacobson's argument to the contrary relies on *Putman v. Gerloff*, 639 F.2d 415 (8th Cir. 1981).  In

*Putman*, the plaintiffs were pre-trial detainees who alleged that they were beaten and chained while in custody.  639 F.2d at 417-418.  They also alleged that one officer was present while they were assaulted, but failed to intervene to prevent them from being beaten.  *Id*. at 423.  The Eighth Circuit Court of Appeals held that a police officer may not fail to intervene when the officer sees or is aware of such abuse of a third person by another officer.  *Id*.

*Putman* is not applicable in this case, however.  *Putman* is an excessive force case and it is unclear that its reasoning would apply in other situations.  *See Michaud v. Demarest*, Civil No. 06-4362 ADM/JSM, 2008 WL 4057744 (Aug. 26, 2008) (noting *Putman* holds that "law enforcement officers may be held liable for the use of excessive force even where they had no physical contact with the individual").  Even if *Putman* applied outside the context of excessive force cases, the Eighth Circuit held in *Putman* that the officer who did not intervene would not be liable for failing to do so if he did not see the abuse or did not have time to reach the other officer to stop the abuse.  639 F.2d at 424.  Therefore, the duty to intervene established in *Putman* is only triggered when a law enforcement officer witnesses or is aware of a violation of a constitutional right by another law enforcement officer at the time the violation is occurring.  It is axiomatic that an officer cannot intervene to stop abusive conduct after the conduct has already occurred.  In this case, there is no evidence in the record that Trooper Kunz was aware of the charges against Jacobson.  With respect to Trooper Bye, the evidence viewed in the light most favorable to Jacobson suggests that Trooper Bye was aware that Jacobson had been charged, but not that he was present for or aware of Deputy Mott's alleged

fabrication of the basis for a criminal charge without probable cause at the time the charge was filed.

Jacobson also stated at his deposition that Troopers Bye and Kunz, along with Deputy Mott, used excessive force in arresting him and that he was asserting an excessive force claim in this case.  (Doc. No. 28 ¶ 3, Ex. B at 37.)  Any such claims, however, were not pleaded in Jacobson's complaint and, therefore, cannot be considered by this Court.

There is insufficient evidence in the record to support Jacobson's claims against Troopers Bye and Kunz.  As a result, the Court does not address the Troopers' arguments regarding the defenses of qualified and official immunity.  The Court, therefore, grants the summary judgment motion of Troopers Bye and Kunz as to all of Jacobson's claims.

## III.    Claims Against Deputy Mott

The core of Jacobson's allegations relate to Deputy Mott's alleged conduct. Jacobson alleges that Deputy Mott acted under color of state law in fabricating the factual basis for a gross misdemeanor obstruction charge against him so that Jacobson would be held in jail over the weekend.  Jacobson contends Deputy Mott's actions violated his rights under the First, Fourth, and Fourteenth Amendments.  Jacobson also asserts a claim of malicious prosecution.  Deputy Mott has denied the allegations and contends that he is entitled to qualified immunity.  Deputy Mott further argues that Jacobson cannot maintain a claim against him for malicious prosecution.

### A.    Qualified Immunity

The defense of qualified immunity is available to a government employee sued in his or her individual capacity.[5] *Johnson v. Outboard Marine Corp.,* 172 F.3d 531, 535 (8th Cir. 1999). A defendant is shielded from civil liability if it is shown that his or her "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). "Qualified immunity is available 'to all but the plainly incompetent or those who knowingly violate the law.'" *Avalos v. City of Glenwood,* 382 F.3d 792, 798 (8th Cir. 2004) (quoting *Malley v. Briggs,* 475 U.S. 335, 341 (1986)). Therefore, liability does not arise from an official's bad guess in a gray area, but instead flows only from the transgression of a bright line. *Davis v. Hall,* 375 F.3d 703, 712 (8th Cir. 2004) (quoting *Maciariello v. Sumner,* 973 F.2d 295, 298 (4th Cir. 1992)).

Whether qualified immunity shields a defendant is a question of law to be decided by the district court. *Littrell v. Franklin,* 388 F.3d 578, 585 (8th Cir. 2004). On a motion for summary judgment, the Court employs a three-part test to determine whether qualified immunity exists. *Goff v. Bise,* 173 F.3d 1068, 1072 (8th Cir. 1999). First, the

---

[5]    Jacobson argues that the defense of qualified immunity should not be available to Minnesota public officials sued in their individual capacities because Minnesota law provides for indemnification of such public officials up to a certain amount. According to Jacobson, such officials are not in danger of personal liability and the policies underlying the qualified immunity defense do not apply. The doctrine of qualified immunity is a well developed legal principle. Further, other courts have held that whether an official will be indemnified is irrelevant to determining immunity issues. *See, e.g., Luder v. Endicott*, 253 F.3d 1020 (7th Cir. 2001) (considering indemnification irrelevant for Eleventh Amendment immunity and citing cases).

plaintiff must assert a violation of a constitutional right. *Id.* Second, the alleged right must be clearly established. *Id.* Third, taking the facts in the light most favorable to the plaintiff, there must be no genuine issues of material fact as to whether a reasonable official would have known that the alleged action violated the plaintiff's clearly established rights. *Id.* If the Court determines that the facts, viewed in the light most favorable to the injured party, do not establish a violation of a constitutional right, no further inquiry is necessary. *Saucier v. Katz,* 533 U.S. 194, 201 (2001).

The Eighth Circuit has held that for a right to be clearly established, the contours of the right "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Vaughn v. Ruoff,* 253 F.3d 1124, 1129 (8th Cir. 2001). There is no requirement that the action complained of has been previously held unlawful, but instead, in the light of pre-existing law, the unlawfulness must be apparent. *Id*. If, on an objective basis, it is obvious that no "reasonably competent officer would have concluded that the defendant should have taken the disputed action," qualified immunity does not apply. *Samuelson v. City of New Ulm*, 455 F.3d 871, 877 (8th Cir. 2006).

### B.   Constitutional Claims

Jacobson alleges violations of his rights under the First, Fourth, and Fourteenth Amendments. The Court addresses each in turn.

#### 1.   First Amendment

Jacobson alleges that Deputy Mott's actions occurred in retaliation for Jacobson's exercise of his First Amendment rights. According to Jacobson, he questioned the basis

for the warrant, Deputy Mott refused to tell him the basis, and Jacobson responded by saying: "This is bullshit." (Doc. No. 28 ¶ 3, Ex. B at 28.) As evidence that Deputy Mott was motivated by retaliatory animus, Jacobson contends that, as he was in Deputy Mott's car being transported to the Mille Lacs County Jail, Deputy Mott said: "Now I'm putting a charge on you so that you can't get out at all, you can't bail out." (*Id.* at 40, 90-91.)

A citizen's right to exercise his or her constitutional freedom "to speak . . . without facing retaliation from government officials" is clearly established. *Kilpatrick v. King*, 499 F.3d 759, 767 (8th Cir. 2007). In order to prevail on his retaliation claim, Jacobson must show a causal connection between Deputy Mott's "retaliatory animus" and the injury suffered. *See Hartman v. Moore*, 547 U.S. 250, 259 (2006). "Adverse action that cannot be defended by any non-retaliatory explanation provides a basis for a reasonable jury to find that defendants acted with improper motives." *Kilpatrick*, 499 F.3d at 768. Jacobson must show, however, that he was "singled out for prosecution while others similarly situated [were not] prosecuted" for similar conduct. *Osborne v. Grussing*, 477 F.3d 1002, 1006 (8th Cir. 2007).

Jacobson has failed to make the required showing. The link between Jacobson's statement and his allegations regarding Deputy Mott's conduct is tenuous and is insufficient to establish the required "but for" causal connection. Further, the record contains no evidence that Jacobson was singled out by Deputy Mott and treated in a different way from other similarly situated persons. Therefore, the Court grants summary judgment to Deputy Mott with respect to Jacobson's First Amendment claim.

2.      Fourth Amendment

Jacobson does not contest that he was validly arrested upon an existing warrant.

Jacobson contends, however, that he was unconstitutionally deprived of his liberty

because, due to the allegedly fabricated gross misdemeanor obstruction charge, he was

held for 48 hours over the weekend while he waited to be brought before a judge.[6]

The Fourth Amendment guarantees an individual's right to be free from arrest

without probable cause.  U.S. Const. amend. IV; *Lambert v. City of Dumas*, 187 F.3d

931, 935 (8th Cir. 1999).  Jacobson has asserted a violation of a constitutional right,

meeting the first prong of the qualified immunity analysis.  The Court also concludes that

the second prong is met because the requirement that probable cause exist to charge a

defendant with a crime is a clearly established constitutional right.  *Kukla v. Hulm*, 310

F.3d 1046, 1049 (8th Cir. 2002).

The crux of this case rests upon the third prong of the qualified immunity analysis;

under this prong there must be no genuine issues of material fact as to whether a

reasonable official would have known that the alleged action violated the plaintiff's

clearly established rights.  *Goff*, 173 F.3d at 1072.  In connection with this inquiry, a

court examines "whether officers' actions are 'objectively reasonable' in light of the facts

---

[6]     Jacobson contends that he would have been released on the night of his arrest had
he merely been charged with simple obstruction.  The harm he alleges he suffered, and
ostensibly his claim for damages, arise from the imposition of the additional gross
misdemeanor charge.  (Doc. No. 37 at 12.)  The Court notes that as the facts are alleged
by Jacobson, he did not resist Deputy Mott's attempt to arrest him by pulling away when
Deputy Mott attempted to grab his arm.  Viewing the facts in the light most favorable to
Jacobson, this would call into question the simple obstruction charge as well.  The Court
will not consider this argument for the reasons discussed below.

and circumstances confronting them, without regard for the underlying intent or motivation." *Guite v. Wright*, 147 F.3d 747, 750 (8th Cir. 1998) (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)). Thus, the issue is whether Deputy Mott reasonably believed that probable cause existed to charge Jacobson with gross misdemeanor obstruction of legal process.

Probable cause exists to charge a person with a crime "if, at the moment the arrest was made, the facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent person in believing that an offense had been committed." *United States v. Rivera*, 370 F.3d 730, 733 (8th Cir. 2004) (citing *United States v. Wajda*, 810 F.2d 754, 758 (8th Cir. 1987). For purposes of determining whether Deputy Mott is protected by qualified immunity, the relevant issue is not whether probable cause existed, but whether Deputy Mott had "arguable probable cause." *Gorra v. Hanson*, 880 F.2d 95, 97 (8th Cir. 1989). Law enforcement officers are not required to conduct a "mini-trial" before arrest, but probable cause is not present for an arrest when a "minimal further investigation" would have exonerated the suspect. *Amrine v. Brooks*, 522 F.3d 823, 832 (8th Cir. 2008). Although courts give substantial latitude to police officers to draw factual inferences from their observations, such deference is not unlimited. *See Kuehl v. Burtis*, 173 F.3d 646, 651 (8th Cir. 1999) (affirming denial of summary judgment on qualified immunity to officer in suit claiming criminal defendant was arrested for assault without probable cause where arresting officer ignored "plainly exculpatory evidence" and failed to adequately

interview witnesses who saw the struggle between the defendant and an attacker, in which the defendant hit the attacker).

Under Minnesota Statutes section 609.50, subd. 1(2), obstructing legal process occurs when a person "obstructs, resists, or interferes with a peace officer while the officer is engaged in the performance of official duties." An alleged violator can be charged with a gross misdemeanor obstruction crime if "the act was accompanied by force or violence or the threat thereof." Minn. Stat. § 609.50, subd. 2(2). The words "force or violence or the threat thereof" are to be construed according to common usage. *State v. Engholm*, 290 N.W.2d 780, 784 (Minn. 1980).

The Minnesota Supreme Court has held that the statute is directed at physical obstruction and that "physically obstructing or interfering with a police officer involves not merely interrupting an officer but substantially frustrating or hindering the officer in the performance of his duties." *State v. Krawsky*, 426 N.W.2d 875, 877 (Minn. 1988); *see also State v. Diedrich*, 410 N.W.2d 20 (Minn. Ct. App. 1987) (upholding conviction for obstruction using force or violence where defendant pushed against officer's face, head and shoulders with an open palm in attempt to escape police car); *State v. Wilson*, No. C9-92-956, 1992 WL 366009 (Minn. Ct. App. Dec. 15, 1992) (upholding conviction for obstruction using force or violence where defendant jumped on police officer's back during attempt to arrest her son). The statute does not apply to oral criticism of an officer, but in limited circumstances can apply to "fighting words" or "any other words that by themselves have the effect of physically obstructing or interfering with a police officer in the performance of his duties." *Krawsky*, 426 N.W.2d at 877, 878; *see also*

*State v. Tomlin*, 622 N.W.2d 546, 548 (Minn. 2001) (holding evidence was insufficient to sustain obstruction conviction where defendant lied to officers, lengthening the time it took to apprehend suspects of investigation, but false statements did not physically obstruct police from attempting to obtain evidence); *State v. Clancy*, No. C9-01-710, 2002 WL 233913 (Minn. Ct. App. Feb. 19, 2002) (upholding conviction for obstruction using force or violence where defendant moved aggressively toward officer yelling obscenities and telling the officer:  "You're mine," causing officer to fear for his safety and mace defendant, and where defendant rolled around with the officer on the ground during officer's attempt to handcuff defendant); *State v. Wybierala*, No. C2-95-1395, 1996 WL 5816 (Minn. Ct. App. Jan. 9, 1996) (conviction for obstruction of legal process using force or violence upheld where defendant told police officer that officer would be attacked by dogs if he entered property and defendant complied with officer's request that dogs be restrained only after officer drew his gun and threatened to shoot the dogs).

In this case, there are disputed issues of material fact as to what happened when Jacobson was arrested.  According to Jacobson, he did not resist arrest in any way.  According to Deputy Mott, Jacobson pulled away from him twice, said he would not get in the car, needed to be restrained by two police officers for handcuffing, and pushed back against the officers and continued to struggle with them as he was being handcuffed.  These unresolved factual issues prevent this Court from granting summary judgment to Deputy Mott.  *See Kukla*, 310 F.3d 1046, 1049 (noting that an officer is entitled to qualified immunity if the officer alleges conduct giving rise to probable cause and the charges are not disputed, but also that "if the arrestee challenges the officer's description

of the facts and presents a factual account that would not permit a reasonable officer to make an arrest, then there is a material factual dispute precluding summary judgment").[7] If the facts are as Jacobson alleges, arguable probable cause did not exist for the charge of gross misdemeanor obstruction of legal process.  If the facts are as Deputy Mott alleges, it is possible that arguable probable cause did exist.[8]

    This Court has reviewed the state court's decision in Jacobson's criminal case that probable cause did not exist for the gross misdemeanor charge, but did exist for the

---

[7]    In this case, it is not the arrest itself that gives rise to the claim, but Deputy Mott's alleged fabrication of the factual basis for the gross misdemeanor charge against Jacobson.  The Court does not view this distinction as precluding Jacobson's claim.  Even if a law enforcement officer lawfully arrests a suspect, the existence of a valid arrest does not permit the officer to subsequently lie about the suspect's conduct to support criminal charges for which there is no probable cause.

[8]    The Court notes that, if the facts are as Deputy Mott contends and arguable probable cause did exist for the charge of gross misdemeanor obstruction, it exists only by the slimmest of margins.  Ultimately, resolution of this issue will depend on the degree of force Jacobson exerted in pushing against the officers and struggling as he was being handcuffed.  The Court has examined a number of cases involving similar conduct and misdemeanor obstruction of legal process appears to be, by far, the more valid charge.  *See State v. Olson*, 634 N.W.2d 224, 227, 229 (Minn. Ct. App. 2001) (probable cause existed for misdemeanor obstruction of legal process where defendant twisted, turned, and pulled away from deputy and subsequently "struggled more violently"); *State v. Occhino*, 572 N.W.2d 316 (Minn. Ct. App. 1997) (defendant committed misdemeanor obstruction of legal process by engaging in repeated verbal interruptions of officer and by pulling his arms away from officer and pushing himself backwards into her, and where additional officers were required to subdue defendant); *State v. Coleman*, No. C1-00-691, 2000 WL 1693633 (Minn. Ct. App. Nov. 14, 2000) (gross misdemeanor charge of obstruction dismissed for lack of probable cause where defendant resisted and struggled with an officer and the officer was required to strike the defendant to obtain compliance with command that defendant put his hands behind his back).  At the same time, the Court is well aware that its view from the bench, sometimes long after an event transpired, is quite different from the view of a trained and experienced law enforcement officer confronted with circumstances in the field as they are unfolding.

charge of simple obstruction.  Both of the parties make arguments based upon the state court's decision.  The Court concludes, however, that the state court's order is not determinative of the issues presented here.

First, while the state court considered whether probable cause existed for the gross misdemeanor charge and found it lacking, it did not consider the issue before this Court, that of whether *arguable* probable cause existed for the charge.  Further, the state court's decision does not collaterally estop Jacobson from asserting the precise issue presented here.  In *Crumley v. City of St. Paul, Minn.*, 324 F.3d 1003, 1006-1007 (8th Cir. 2003), the Eighth Circuit held that a plaintiff alleging probable cause was lacking for her arrest was collaterally estopped from raising the issue in a proceeding under 42 U.S.C. § 1983 because the issue had been litigated and decided against her in her criminal proceeding. Here, however, Jacobson's case is based not upon the misdemeanor obstruction charge for which the state court found probable cause existed, but upon the gross misdemeanor charge for which the state court's decision favored Jacobson.[9]  Finally, Deputy Mott argues that because the state court found that probable cause existed for the misdemeanor obstruction charge, arguable probable cause necessarily existed for the arrest.  The arrest itself, however, is not the basis for Jacobson's suit.  Rather Jacobson bases his request for

---

[9]      Based upon the reasoning in *Crumley*, Jacobson would be barred from litigating whether probable cause existed for the simple obstruction charge.  Though the standards courts apply in probable cause hearings are different from those applied to summary judgment motions, the ultimate issue of whether probable cause existed for that charge has been litigated and determined against Jacobson.  The Court will not revisit the issue here.

relief on the consequences of the additional gross misdemeanor charge levied against him based upon Deputy Mott's activities.

The Court concludes that material issues of disputed fact exist regarding whether Deputy Mott had arguable probable cause to charge Jacobson with gross misdemeanor obstruction of legal process.  Upon the record before the Court at this time, and viewing the facts in the light most favorable to Jacobson, the Court declines to grant Deputy Mott qualified immunity with respect to Jacobson's Fourth Amendment claim regarding the gross misdemeanor obstruction charge.[10]  The Court, therefore, denies Deputy Mott's request for summary judgment as to this claim.

### 3.    Fourteenth Amendment

With respect to Jacobson's claim under the Fourteenth Amendment, the Court concludes summary judgment is properly granted to Deputy Mott.  Though Jacobson mentions the Fourteenth Amendment in passing in his complaint, his submissions to this Court fail to discuss the basis for his claim of a Fourteenth Amendment violation. Notwithstanding that, the Court will address Jacobson's Fourteenth Amendment and determines that it fails to meet the standard required for asserting such claims.

The Fourteenth Amendment guarantees due process of law.  U.S. Const. amend. XIV (containing the Due Process Clause stating "nor shall any State deprive any person of life, liberty, or property, without due process of law").  The Fourteenth Amendment does not itself create protectable interests, but protects rights derived from independent

---

[10]    The Court anticipates that it may revisit this issue at trial after a full presentation of the facts regarding the circumstances of Jacobson's arrest.

sources. *Hughes v. Whitmer*, 714 F.2d 1407, 1417 (8th Cir. 1983).  The right asserted by Jacobson is one provided by the Fourth Amendment and, therefore, the Court must consider Jacobson's Fourteenth Amendment claim in connection with his claim asserted under the Fourth Amendment.[11]  The Eighth Circuit has noted that the standards that must be met to establish a Fourteenth Amendment due process claim are "seemingly more burdensome, and clearly no less burdensome" than the standards applied to Fourth Amendment claims.  *Wilson v. Spain*, 209 F.3d 713, 716 (8th Cir. 2000).

The Due Process Clause protects against the denial of fundamental procedural fairness (procedural due process) and against the arbitrary and oppressive exercise of power by the government (substantive due process).  *County of Sacramento v. Lewis*, 523 U.S. 833, 845-846 (1998).  The protections of the Due Process Clause are triggered when government official's conduct was "conscience-shocking" and violates one or more fundamental rights that are "deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed."  *Davis,* 375 F.3d at 718 (quoting *Moran v. Clarke*, 296 F.3d 638, 651 (8th Cir. 2002)); *see also Hawkins v. Holloway*, 316 F.3d 777 (8th Cir. 2003) (no due process violation where sheriff touched or fondled the genitals of male employees while making vulgar comments and question of fact existed as to whether sheriff violated due process rights by pointing weapon at employees and threatening to shoot them,

---

[11]      The Court does not consider any implication of Jacobson's First Amendment claim in relation to the analysis of the Fourteenth Amendment because the Court has determined Jacobson's First Amendment claim lacks merit.

depending on whether sheriff's conduct was a serious threat of violence or a joke).

Generally, an official's conduct must be intended to inflict harm to be "conscience

shocking in the constitutional sense." *Hawkins*, 316 F.3d at 788. The determination of

whether an official's conduct shocks the conscience is a question of law. *Hayes v.

Faulkner County, Ark.,* 388 F.3d 669, 675 (8th Cir. 2004).

Jacobson was lawfully arrested and taken to jail in connection with the existing

warrant, but alleges he was unlawfully held for the weekend to be brought before a judge,

when without the gross misdemeanor charge he contends he would have been released

the night of his arrest. In *Hayes,* the Eighth Circuit considered whether a 38-day

detention before an arrestee's initial appearance violated the Due Process Clause. *Id*. at

673-674. The Court noted that the Supreme Court has held that "[t]he consequences of

prolonged detention may be more serious than the interference occasioned by arrest.

Pretrial confinement may imperil the suspect's job, interrupt his source of income, and

impair his family relationships." *Id*. at 673 (quoting *Gerstein v. Pugh*, 420 U.S. 103, 114

(1975)). Thus, the Court determined that the 38-day detention shocked the conscience

and violated the plaintiff's constitutional rights. *Id*. at 675.

A shorter extended detention, however, has been held not to violate the Due

Process Clause. In *Luckes v. County of Hennepin, Minn.*, the plaintiff was arrested

pursuant to a valid bench warrant for failing to pay traffic fines and was subjected to

processing delays that extended his detention so that he was held for 24 hours. 415 F.3d

936, 938 (8th Cir. 2005). During his extended detention, the plaintiff was placed in

overcrowded cells with persons arrested for violent crimes, and he endured threats,

intimation and mockery regarding his speech impediment by other detainees. *Id.* The Eighth Circuit stated that the Due Process Clause of the Fourteenth Amendment protects an individual's liberty interest from unlawful state deprivation, "such as where the state detains the individual after he is entitled to release," and noted that deliberate indifference to such a right may sufficiently shock the conscience to create a violation of the Fourteenth Amendment. *Id.* at 939. The Eighth Circuit concluded, however, that while the plaintiff may have raised an issue of material fact as to whether he was entitled to immediate release, his 24-hour detention did not shock the conscience.[12] *Id.*

The Court concludes that Jacobson's detention from late Saturday night until Monday does not shock the conscience sufficiently to establish a violation of the Due Process Clause. Jacobson contends that over the weekend he spent in jail he missed several family events that were important to him, but he has not shown that his family relationships were impaired as a result. Jacobson suffered no adverse employment consequences and did not lose any wages as a result of his extended detention.

The Court also determines that the alleged fabrication of the factual basis for the obstruction using force or violence charge does not rise to the level of a Fourteenth

---

[12]     The length of time one is detained is not the only factor analyzed and, in some instances, a shorter detention has been held to shock the conscience, such as in circumstances in which the arrestee was subjected to other mistreatment. *See, e.g., Young v. City of Little Rock*, 249 F.3d 730 (8th Cir. 2001) (plaintiff, who was mistaken for another person when arrested, was detained from Saturday afternoon until Monday morning, even though arresting officer told his supervisor he believed he had arrested the wrong person, was strip searched, and after magistrate determined that she was not the person identified by the arrest warrant, was chained to other detainees and again strip searched before being processed for release). No such mistreatment is alleged here.

Amendment violation.  The Eighth Circuit has held that a law enforcement officer who falsifies evidence to procure a conviction violates a suspect's due process rights.  *Wilson v. Lawrence County*, 260 F.3d 946, 954 (8th Cir. 2001) (constitutional violation where officers coerced confession from mentally handicapped suspect by lying to him, threatening him, and providing details regarding crime in a leading fashion, and used the coerced statement to convict defendant).  In this case, however, even if Jacobson's conduct does not satisfy the arguable probable cause standard for the gross misdemeanor obstruction charge, Deputy Mott's alleged conduct is not so conscience shocking as to support a Fourteenth Amendment claim.

Therefore, the Court concludes that Jacobson has not established a claim under the Fourteenth Amendment.  The Court grants summary judgment to Deputy Mott as to Jacobson's Fourteenth Amendment claim.

### C.    Malicious Prosecution

Jacobson asserts a claim of malicious prosecution based on the criminal case against him.  The elements of a claim for malicious prosecution are:  (1) the suit in question must have been brought without probable cause and with no reasonable ground on which to base a belief that the plaintiff would prevail on the merits; (2) the suit must have been instituted and prosecuted with malicious intent; and (3) the suit must have ultimately terminated in favor of the defendant.  *Stead-Bowers v. Langley*, 636 N.W.2d 334, 338 (Minn. Ct. App. 2001) (citing *Jordan v. Lamb*, 392 N.W.2d 607, 609 (Minn. Ct. App. 1986)).  Viewing the record in the light most favorable to Jacobson, he has arguably

established the first factor and has established the third factor.  The record before the

Court does not, however, show that Jacobson's criminal case meets the second criteria.

Jacobson claims that Deputy Mott fabricated the factual basis for the gross

misdemeanor charge.  He has not claimed or shown, however, that the prosecutor who

pursued this charge was also tainted by malicious intent.  Though he acknowledges this

fact, Jacobson contends that prosecutors rely on statements and reports given to them by

law enforcement officers.  Jacobson argues that if the law enforcement officer

manufactures evidence, then the entire prosecution is tainted whether or not the

prosecutor was aware of the manufactured evidence.[13]

An officer's fabrication standing alone may lead to a constitutional claim, as

discussed above, but it does not also establish a state law malicious prosecution claim

unless the prosecutor is involved.  This is true because, while a law enforcement officer's

statements to a prosecutor may certainly influence the direction of a case, such statements

do not overshadow the independent judgment applied to criminal prosecutions by the

prosecuting authority.  Particularly, to establish a malicious prosecution claim, Jacobson

must show that the suit was both initiated *and* prosecuted with malicious intent.

Jacobson has not made this showing.  The Court, therefore, grants summary judgment to

Deputy Mott with respect to Jacobson's malicious prosecution claim.

_____

[13]    As noted above, the fabrication of evidence by a law enforcement officer may give rise to a constitutional violation.  A prosecutor's fabrication of evidence and use of such evidence at trial also is a constitutional violation.  *Zahrey v. Coffey*, 221 F.3d 342, 344, 349 (2d Cir. 2000).

## CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that:

1.      The Motion for Summary Judgment of Defendants Reed Bye and Joan Kunz (Doc. No. 24) is **GRANTED** and all claims against them are **DISMISSED WITH PREJUDICE**.

2.      The Motion for Summary Judgment of Defendant Dan Mott (Doc. No. 21) is **GRANTED IN PART** and **DENIED IN PART** as follows:

        a.      Defendant Mott's Motion for Summary Judgment is **GRANTED** as to Plaintiff Richard Joseph Jacobson's claims under the First Amendment and Fourteenth Amendment, and as to his state-law claim for malicious prosecution and such claims are **DISMISSED WITH PREJUDICE**; and

        b.      Defendant Mott's Motion for Summary Judgment is **DENIED** as to Plaintiff's claim under the Fourth Amendment.

**LET JUDGMENT BE ENTERED ACCORDINGLY AS TO DEFENDANTS REED BYE AND JOAN KUNZ ONLY.**


Dated:  January 15, 2009                    s/Donovan W. Frank
                                            DONOVAN W. FRANK
                                            Judge of United States District Court